IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMON A. BENSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3297 |
| | : | |
| SUPERINTENDENT LAURA WILLIAMS, *et al.* | : | |
| | : | |
|     Defendants. | : | |

**MEMORANDUM**

SÁNCHEZ, C.J.                                                                          DECEMBER 13, 2023

*Pro Se* Plaintiff Damon A. Benson brings this action pursuant to 42 U.S.C. § 1983 against two prison officials of the George W. Hill Correctional Facility ("GWHCF") based on allegations that he was unlawfully detained and denied medical care. Benson's original Complaint was dismissed in part with prejudice and in part without prejudice. *See Benson v. George W. Hill Corr. Facility*, No. 23-3297, 2023 WL 7110702, at *3 (E.D. Pa. Oct. 27, 2023). Benson returned with this Amended Complaint. Because Benson fails to state plausible claims of false imprisonment, denial of access to the grievance process, and deliberate indifference, the Court will dismiss Benson's Amended Complaint in part with prejudice and in part without prejudice. Benson will be afforded another opportunity to amend the remaining claim dismissed without prejudice.

**I.     FACTUAL ALLEGATIONS**

Benson names the following two Defendants in the Amended Complaint: (1) Superintendent Laura Williams; and (2) Michael Root, the "Head of Records Department."

(Am. Compl. at 1-2.)[1] He does not rename the GWHCF as a Defendant.[2] In his initial Complaint, Benson alleged that on November 18, 2022, he was transported from SCI Smithfield to GWHCF where he was "unlawfully detained" at GWHCF and "'placed in false imprisonment' there for 'nearly 45 days.'" *Benson*, 2023 WL 7110702, at *1. He further alleged that he was kept at GWHCF "under false pretense" because prison officials mistakenly believed that he was another individual charged with identity theft and related crimes. *Id*. Benson asserted claims for cruel and unusual punishment, due process, and false imprisonment. (*Id*. at 3-5.)

In its October 27, 2023 Memorandum, the Court granted Benson leave to proceed *in forma pauperis* and dismissed the Complaint in part with prejudice and in part without prejudice. *Id*. at 3. As noted above, the Court dismissed all claims against the GWHCF with prejudice. *Id*. at 2. The Court dismissed all claims against Williams and Root without prejudice, noting that Benson's vague and conclusory allegations as to these Defendants led to factually undeveloped claims that were lacking in plausibility. *Id*. In addition, the Court noted that Benson failed to make clear how either Williams or Root were personally involved in the alleged unlawful detainment. *Id*. Finally, the Court concluded that the allegations, as pled, did not raise a plausible inference of supervisor liability against Williams. *Id*. at 3.[3] The Court permitted

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] In its October 27, 2023 Memorandum, the Court dismissed all claims asserted against the GWHCF. *See Benson*, 2023 WL 7110702, at *2-3. The Court reasoned that a prison or correctional facility like the GWHCF "is not a person under § 1983." *Id*. at 2 (citing cases).

[3] The Court explained the two ways in which a supervisor-defendant may be liable for the unconstitutional acts of its subordinates: (1) if the supervisor "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm" *see Benson*, 2023 WL 7110702, at *3 (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015)); or (2) if the supervisor "participated in violating the plaintiff's rights, directed

2

Benson to amend his claims against Root and Williams. *Id*.

Benson returned with an Amended Complaint, wherein he sets forth similar allegations against Root and Williams. Specifically, he alleges that on November 18, 2022, he was transported from SCI Smithfield, where he was being held, to the GWHCF. (*Id*. at 4, 5, 7.) He states that he was brought to the GWHCF "under the false pretense that he was Martin Fuller," who was accused of committing identity theft and related crimes. (*Id*. at 12.) Benson told the intake officers that they had the wrong Martin Fuller, but Benson was ignored. (*Id*. at 13.) Although Benson did not file a grievance as he was "denied access to [the] grievance process," he "remained vigilant about his innocence" and "informed everyone who would listen," including correctional officers, sergeants, lieutenants, and counselors" that he was being unlawfully detained. (*Id*. at 5, 8, 15.) Benson alleges that after a month of "constant complaining [about the] wrongful detainment, [the] records department and superintendent discovered they had the wrong person." (*Id*. at 8.)

Benson also alleges that he was injured during transport and denied medical care upon his arrival at the GWHCF. (*Id*. at 5, 12.) He states that after the transport, he expressed to intake officers that he was "feeling extreme pain in his private area" and that he was bleeding from his penis. (*Id*. at 13.) In response to Benson's "screams of horror and agony" at the sight of blood, the intake officers "rushed [Benson] to seek immediate medical attention." (*Id*.) According to Benson, however, he was never sent to an outside medical facility. (*Id*.) Rather, he was examined in the prison medical department, provided Motrin, and underwent a urinalysis, which showed blood in his urine. (*Id*.)

---

others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*. (quoting *Barkes*, 766 F.3d at 316).

3

In addition, Benson alleges that he was placed in a housing unit at GWHCF with no correctional officers on duty and with cell doors that did not properly lock. (*Id*. at 13.) Inmates could manipulate the locks and roam around Benson's housing unit throughout the night, which caused Benson to fear for his life. (*Id*. at 13-14.) Benson also alleges that Williams "knew of this problem" of the faulty cell door locks. (*Id*. at 13.) Benson states that his alleged illegal detainment was "traumatic" and caused him to suffer anxiety and mental anguish in additional to physical symptoms, such as low back pain, headaches, and constant bleeding. (*Id.* at 5.) Based on these facts, Benson asserts constitutional claims and seeks money damages. (*Id*.)

## II. STANDARD OF REVIEW

Since Benson is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Benson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8

F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

The Court understands Benson to assert constitutional claims based on his brief detainment at the GWHCF.[4]  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

#### A.   False Imprisonment Claims

The crux of Benson's Amended Complaint is that Defendants unlawfully detained him at the GWHCF under the mistaken belief that he was somebody who had been charged with identify theft crimes.  "A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law."

---

[4] Benson states that he asserts claims under the Eighth, Thirteenth, and Fourteenth Amendments.  (Am. Compl. at 3.)  There is nothing alleged in the Amended Complaint that supports a plausible Thirteenth Amendment claim.  The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII, § 1.  "A claim under the Thirteenth Amendment must include allegations of forced labor." *Fennell v. Kostura*, No. 19-669, 2019 WL 2615484, at *10 (E.D. Pa. June 25, 2019) (citing cases).  Benson does not allege any facts about labor he performed at the GWHCF, let alone forced labor.  To the extent Benson asserts claims under the Thirteenth Amendment, those claims are dismissed.

5

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). A plaintiff must allege that he was detained and that the detention was unlawful. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007). A plaintiff is unable to show a deprivation of his liberty, however, when he was already detained as a prisoner at the time of the subsequent alleged detention. *See McCabe v. City of Philadelphia*, No. 01-3975, 2002 WL 32341787, at *4 (E.D. Pa. Nov. 13, 2002) ("A plaintiff cannot state a claim for false arrest when he is already in custody."), *aff'd*, 76 F. App'x 464 (3d Cir. 2003); *Talbert v. Dep't of Corr.*, No. 22-4189, 2022 WL 17177479, at *1 (E.D. Pa. Nov. 23, 2022) (dismissing false imprisonment claim on screening of a pretrial detainee where "the Commonwealth had already detained him for unrelated charges [and he was] awaiting trial"); *Hall v. Berdanier*, No. 09-1016, 2012 WL 1004916, at *3 (M.D. Pa. Mar. 23, 2012) ("Plaintiff has no claim for false arrest/false imprisonment under state law because his arrest did not cause him to be detained; he was already detained by virtue of his imprisonment.").

At the time of his alleged unlawful detention, Benson was already in the custody of the Pennsylvania Department of Corrections and housed at SCI Smithfield. Accordingly, even assuming that his detention at the GWHCF was based on a mistake as to his identity, that detention does not support a § 1983 claim because his transfer to the GWHCF did not constitute a deprivation of liberty. *See McCabe*, 2002 WL 32341787, at *4; *Talbert*, 2022 WL 17177479, at *1. In addition, Benson has no constitutional right to be housed in one facility as opposed to another. *See Hunter v. Ortiz*, 125 F. App'x 241, 243 (10th Cir. 2005) ("Because a prisoner does not have a liberty interest in being placed at one facility or another, no process was due to Mr. Hunter when the DOC decided to initially place him at the county jail before moving him to the DOC facility."). Accordingly, Benson's false imprisonment claims will be dismissed with prejudice.

### B. Claim Based on Denial of Access to Grievance Process

Benson also appears to assert a claim that he was denied access to the grievance process, alleging that officials at the GWHCF "refused" to give him grievance forms. (Am Compl. at 8.) However, any § 1983 claim based on the denial of access to the grievance process fails because "[p]risoners do not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (stating that the defendants' "alleged obstruction of prison grievance procedures does not give rise to an independent cause of action"); *see also Washington v. Hoffmann*, No. 16-0259, 2017 WL 4508859, at *4 (W.D. Pa. Sept. 25, 2017), *report and recommendation adopted*, 2017 WL 4508863 (W.D. Pa. Oct. 6, 2017) (dismissing plaintiff's claim that he was denied access to the grievance process when he was not provided a grievance form). Accordingly, to the extent Benson asserts a § 1983 claim based on Defendants allegedly denying him access to grievance forms or the grievance process, his claim is dismissed with prejudice.

### C. Claim Based on Denial of Medical Care

Benson also alleges that he was denied proper medical care during intake at the GWHCF after experiencing intense pain in his private area and urinating blood. To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical

7

treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Assuming that Benson's pain and bloody urine presented a serious medical need, Benson's claims nevertheless fail as pled because he has not alleged any facts raising a plausible inference that either of the two named Defendants were personally involved with or had any knowledge of his need for medical care upon arrival to the GWHCF. *See Rode*, 845 F.2d at 1207 (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). Moreover, Benson concedes that he received medical attention. He was rushed to the prison medical facility by intake officers, examined by medical providers, underwent testing of his urine, and was provided Motrin. "If a prisoner is under the care of medical experts . . . , a non-medical prison official [such as Roots or Williams] will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Although Benson

believes he should have been sent to an outside medical facility, this simply represents a difference of opinion as to the proper medical care, which does not constitute deliberate indifference.  *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (*per curiam*) (stating that allegations of negligent diagnosing and treatment, and mere disagreement as to proper medical treatment do not raise a constitutional claim).  Rather, when prisoners receive some medical treatment and a dispute arises "over the adequacy of treatment," district courts should not "second guess medical judgments and . . . constitutionalize claims which sound in state tort law."  *U. S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (citation omitted).

Accordingly, Benson's claim for denial of medical care must be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  And while Benson's original Complaint did not assert denial of medical care, the Court now dismisses the claim for the same reason it previously dismissed Benson original Complaint: a failure to plead the Defendants' personal involvement in the alleged constitutional violation.[5]  Thus, because the Court previously gave Benson an opportunity to cure this defect and he has been unable to do so, the Court finds further leave to amend and state a claim for denial of medical care would be futile, and the claim is dismissed with prejudice.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding amendment by pro se litigant would be futile because litigant "already had two chances to tell his story").

### D.    Claim Based on Unlocked Doors

---

[5] The Court previously explained it dismissed Benson's claims against Williams and Root because Benson's original Complaint did "not [make] clear how Williams and Root were specifically involved in the alleged unlawful detainment." *Benson*, 2023 WL 7110702, at *2. Here, Benson again does not raise any specific factual allegations about how either of the named Defendants were personally involved with or had any knowledge of his need for medical care.

Benson alleges that the cell doors on his unit at GWHCF did not lock properly and that inmates could wander around his unit throughout the night, which caused Benson to be afraid. He also alleges that Williams "knew of this problem." (Am. Compl. at 13.) The Court understands Benson to assert an Eighth Amendment deliberate indifference claim against Williams based on the safety conditions of his unit. Generally, "[t]o determine whether prison officials have violated the Eighth Amendment, [the Court will] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). As noted above, a prison official is not deliberately indifferent to an inmate's safety "unless the official knows of and disregards an excessive risk to inmate health or safety." *See Farmer*, 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. However, a claim based on negligence is insufficient to allege a claim under § 1983. *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

Benson fails to allege a plausible claim for deliberate indifference to his safety. He merely alleges that Williams knew about the faulty cell door locks in his unit. He does not allege

any facts raising a plausible inference that the faulty locks created a serious risk to Benson's safety and that Williams was aware of that serious risk and consciously disregarded it. Accordingly, Benson's deliberate indifference claim against Williams will be dismissed without prejudice.

## IV.     CONCLUSION

Because Benson fails to state plausible claims of false imprisonment, denial of access to the grievance process, and deliberate indifference, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The following of Benson's claims are dismissed with prejudice: the false imprisonment claims, any claims based on the denial of access to the grievance process, the deliberate indifference to medical care claim, and any claims asserted under Thirteenth Amendment.  Benson's claims for deliberate indifference to safety is dismissed without prejudice.  The Court will grant Benson leave to file an amended complaint in the event he can cure the defects the Court has identified in his deliberate indifference to safety claim.  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

   **/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**