IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMON A. BENSON,       : | |
|     Plaintiff,       : | |
|            : | |
| v.       : | CIVIL ACTION NO. 23-CV-3297 |
|            : | |
| SUPERINTENDENT LAURA       : | |
| WILLIAMS, *et al*.       : | |
|     Defendants.       : | |

MEMORANDUM

SÁNCHEZ, J.                                                                                                       JULY 10, 2024

*Pro Se* Plaintiff Damon A. Benson initiated this action pursuant to 42 U.S.C. § 1983 against two prison officials of the George W. Hill Correctional Facility ("GWHCF") based on allegations that he was unlawfully detained under a mistaken identity. Defendants have moved to dismiss Benson's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27.) Because after three attempts, Benson has failed to allege a plausible claim for false imprisonment, violation of the Thirteenth Amendment, or deliberate indifference to his medical needs or safety under the Eighth Amendment, the Motion will be granted, and Benson's Second Amended Complaint will be dismissed with prejudice.

**I.      PROCEDURAL HISTORY**

Benson initiated this case on August 22, 2023, by filing a Complaint against the GWHCF, Superintendent Laura Williams, and Director of Records Department Michael Root. (*See* ECF No. 1.) Benson alleged that he was unlawfully detained at the GWHCF and mistakenly accused of crimes. After screening the Complaint under 28 U.S.C. § 1915(e), the Court granted Benson leave to proceed *in forma pauperis*, dismissed the claims against the GWHCF with prejudice, dismissed the remaining claims without prejudice, and permitted

Benson to file an amended complaint. *See Benson v. George W. Hill Corr. Facility*, No. 23-3297, 2023 WL 7110702, at *3 (E.D. Pa. Oct. 27, 2023).

Benson returned with an Amended Complaint against Williams and Root. (Am. Compl. at ECF No. 12.) In his Amended Complaint, Benson alleged that on November 18, 2022, he was transported from SCI Smithfield, where he was being held, to the GWHCF. (*Id*. at 4, 5, 7.) Benson alleged that he was brought to the GWHCF "under the false pretense that he was Martin Fuller," who had been accused of committing identity theft and related crimes. (*Id*. at 12.) Benson also alleged that he was denied appropriate medical treatment upon his arrival at GWHCF after sustaining an injury during transport, and that he was housed in a unit with faulty cell door locks, which caused him to suffer anxiety. (*Id*. at 5, 12-14.) Upon screening under § 1915, the Court dismissed the Amended Complaint in part with prejudice and in part without prejudice. *See Benson v. Williams*, No. 23-3297, 2023 WL 8651410, at *5 (E.D. Pa. Dec. 13, 2023).

The Court dismissed Benson's Fourteenth Amendment false imprisonment claim with prejudice, concluding that because Benson had already been in the custody of the Pennsylvania Department of Corrections, where he was housed at SCI Smithfield, his transfer to GWHCF did not constitute a deprivation of liberty. *Id*. at *3. The Court also dismissed with prejudice Benson's claims based on his alleged denial of access to the grievance process and claims based on the alleged denial of medical care. *Id*. at *3-4. The Court dismissed without prejudice Benson's deliberate indifference to safety claims, stating that Benson failed to allege sufficient facts to raise a plausible inference that the faulty locks on the prison cells created a serious risk to his safety and that Williams was aware of the risk and disregarded it. *Id*. at *5.

Benson returned with a Second Amended Complaint, asserting claims against Williams and Root. The Court directed service of the Second Amended Complaint on the Defendants. (ECF Nos. 17, 21.) After being served, Williams and Root filed this Motion to Dismiss pursuant to Rule 12(b)(6). (Mot. Dismiss, ECF No. 27.) A scheduling order was entered directing Plaintiff to respond to the Motion to Dismiss within 30 days. (ECF No. 28.) Benson thereafter filed a "Motion of *Pro Se* Plaintiff Damon A. Bensons to Reamend Plaintiff's Brief," which the Court construes as Benson's Response to the Motion to Dismiss. (Mot. Dismiss Resp., ECF No. 31.)

## II.  FACTUAL ALLEGATIONS[1]

Taking the allegations in the Second Amended Complaint as true, the relevant facts are as follows. Benson alleges that he was held in custody at the GWHCF for 45 days after "his release date [of] 11/17/2022 for a crime he did not commit." (Sec. Am. Compl. at 12.) On the day he was set to be released, Benson was supposed to "report to" a halfway house, the Gaudenzia Diagnostic and Rehabilitation Center ("DRC") in Philadelphia. (*Id*.) Instead he was detained by the Delaware County Sheriff's Department due to a mistake as to his identity. (*Id*.) The Sheriff's Department mistook Benson, who uses the alias "Martin Fuller," for a different Martin Fuller who had been charged with identity theft crimes. (*Id*.) Defendant Root, the "Head of the Records Department," allegedly pulled the wrong "Martin Fuller" file from the prison database. (*Id*. at 5.) Defendant Williams allegedly "did nothing to" to correct the "mistake." (*Id*.) Forty-five days after being detained at the GWHCF, prison officials "discovered that they had the wrong person in custody." (*Id*. at 12.)

---

[1] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

In addition to the wrongful detention, Benson also alleges that he was subjected to "a safety issue" due to the GWHCF's unit 6 being unattended by guards and containing faulty cell door locks. (*Id*. at 5, 13.) Due to the faulty cell door locks, "inmates could get out or into any cell at will." (*Id*. at 5.) Benson states that Williams "was told by officers" about "the safety issue concerning the [faulty] locks." (*Id*. at 8.) Benson also states that he was ordered to clean his cell and the tables in the day room of unit 6, or else he "would be confined to the [restrictive housing unit]." (*Id*. at 5, 12.) Benson further alleges that he was denied access to grievance paperwork and was denied proper medical treatment when he arrived at the GWHCF. (*Id*. at 12.)[2] When Benson arrived, he was bleeding internally. (*Id*.) The medical staff and intake officers allegedly "knew of this and only took a urinalysis" and gave him Motrin. (*Id*.) Further medical treatment was delayed ten more days, during which time Benson suffered "severe pain." (*Id*.) Based on these allegations, Benson asserts constitutional claims under the Eighth, Thirteenth, and Fourteenth Amendments.[3] (*Id*. at 5.) He seeks money damages. (*Id*.)

## III.    STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the

---

[2] To the extent that Benson attempts to reallege a claim based on the denial of access to the grievance process, that claim is also dismissed. As the Court noted in its December 13 Memorandum, "any § 1983 claim based on the denial of access to the grievance process fails because '[p]risoners do not have a constitutional right to prison grievance procedures.'" *Benson*, 2023 WL 8651410, at *3 (quoting *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007)).

[3] Although the Court previously dismissed with prejudice many of the claims that Benson realleges in his Second Amended Complaint, the Court will nevertheless address them briefly in this Memorandum.

4

complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). Additionally, since Benson is proceeding *in forma pauperis*, the Court may independently screen his Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among

other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Under this screening provision, the Court may address pleading deficiencies including those that were not addressed by the parties.

## IV. DISCUSSION

The Second Amended Complaint is Benson's third opportunity to allege plausible claims against Williams and Root in connection with his forty-five-day detention at the GWHCF. The Court understands Benson to allege a false imprisonment claim, a claim under the Thirteenth Amendment, an Eighth Amendment deliberate indifference to medical care claim, and an Eighth Amendment deliberate indifference to safety claim. In their Motion to Dismiss, Defendants argue that Benson's false imprisonment claim fails because he was incarcerated at the time he was detained at the GWHCF, and his Thirteenth Amendment claim fails because he was a prisoner at the time of his detention. (Memo Dismiss. at 3-4, ECF No. 27-1.) In response, Benson does not specifically address Defendants' arguments but instead provides additional factual background to his claims. (Mot. Dismiss Resp. at 2-4.)[4]

As the Court explained in its December 13 Memorandum, the vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws

---

[4] Although Benson adds factual allegations in his Response to the Motion to Dismiss that were not included in the Second Amended Complaint, none of these additional factual allegations support a plausible claim for relief or alter the Court's conclusion that Defendants' Motion to Dismiss should be granted and that Benson's Second Amended Complaint should be dismissed for the reasons stated in this Memorandum.

of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.   False Imprisonment Claim

Similar to his first two Complaints, the crux of Benson's Second Amended Complaint is that he was unlawfully detained at the GWHCF under the mistaken belief that he was the Martin Fuller who had been charged with identity theft crimes. Although Benson cites to the Eighth Amendment as the basis for his false imprisonment claim, the claim falls under the Fourteenth Amendment.[5] *See Benson*, 2023 WL 8651410, at *3 ("A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law." (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995))); *see also Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 937 (E.D. Pa. 2002) ("The Supreme Court suggested in *Baker* that prolonged detention in the face of a person's protestation of innocence may violate the Fourteenth Amendment." (citing *Baker v. McCollan*, 443 U.S. 137, 143 (1979)).

To state a Fourteenth Amendment false imprisonment claim, the plaintiff must allege that he was detained and that the detention was unlawful. *See Wallace v. Kato*, 549 U.S. 384, 389

---

[5] Defendants argued in their Motion to Dismiss that false imprisonment does not implicate the Eighth Amendment. (Memo Dismiss at 6, ECF No. 27-1.) However, in light of Benson's *pro se* status, the Court will "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999).

7

(2007). As the Court stated in its December 13 Memorandum, "[a] plaintiff is unable to show a deprivation of his liberty . . . when he was already detained as a prisoner at the time of the subsequent alleged detention." *Benson*, 2023 WL 8651410, at *3 (citing cases). The Court concluded that because Benson was already in the custody of the Pennsylvania Department of Corrections ("DOC") when he was detained under the mistaken belief that he was the Martin Fuller charged with identity theft crimes, the detention did not amount to false imprisonment because there was no deprivation of liberty. *Id*. In his Second Amended Complaint, Benson again alleges that his detention at the GWHCF was unlawful but adds that on the day *before* he was detained by the Delaware County Sheriff's Department, he was scheduled to be "released" to "report" to Gaudenzia DRC, a halfway house. (Sec. Am. Compl. at 12.) The Court understands Benson to allege that he had a protected liberty interest in his placement at the halfway house and that by instead detaining him at the GWHCF, Defendants violated his Fourteenth Amendment rights.

      Generally, "prisoners have no liberty interest arising from the Due Process Clause in a particular place of confinement." *Thompson v. Pitkins*, 514 F. App'x 88, 89 (3d Cir. 2013) (*per curiam*) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)). Rather, "[a] state has broad authority to confine an inmate in any of its institutions." *Chavarriaga v. NJ Dept. of Corrs*., 806 F.3d 210, 225 (3d Cir. 2015) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (2005)). In other words, "while a prisoner remains in institutional confinement, the Due Process Clause does not protect his interest in remaining in a particular facility." *Asquith v. Dep't of Corr*., 186 F.3d 407, 411 (3d Cir. 1999). When Benson was "released" to "report" to Gaudenzia DRC, he remained "in custody" or "in constitutional confinement." *See Brennan v. Cunningham*, 813 F.2d 1, 5 (1st Cir. 1987) ("An inmate in a halfway house is granted a measure of liberty that lies between that

8

of a parolee and that of an inmate incarcerated in prison.  While the prisoner in this situation enjoys some significant liberty, *he remains under confinement in a correctional institution*." (emphasis added)).  Additionally, Pennsylvania inmates lack a "constitutionally protected liberty interest in the expectation of release to a community correctional center" even when release is imminent and reasonably anticipated.  *Powell v. Weiss*, 757 F.3d 338, 339 (3d Cir. 2014).

      Here, because Benson was still in custody, Defendants did not infringe upon any liberty interest by detaining him – even if the detention was based on a mistaken identity – instead of allowing him to report to Gaudenzia DRC.  *See id.* at 342 ("[A]n inmate's mere anticipation of freedom, when a privilege has been granted but not yet implemented, does not give rise to a constitutionally recognized liberty interest."); *Asquith*, 186 F.3d at 411 (concluding on summary judgment that the prisoner utilizing a state community release program to live at a halfway house was under "institutional confinement"); *Wilding v. Scranton CCC Ctr.*, No. 23-1879, 2023 WL 8653169, at *5 (M.D. Pa. Dec. 14, 2023) (dismissing due process claim on statutory screening and stating that "placement in a halfway house does not give rise to a protected liberty interest"); *Outen v. Prialeau*, No. 12-4166, 2012 WL 6151958, at *7 (E.D. Pa. Dec. 10, 2012) (dismissing claim based on prisoner's removal from Gaudenzia DRC, where he was placed on parole, back to prison, and concluding that removal did not trigger the protections of the due process clause as the plaintiff was still under "institutional confinement"); *Brayboy v. Johnson*, No. 17-4371, 2018 WL 6018863, at *10 (E.D. Pa. Nov. 16, 2018) (dismissing due process claims by parolee plaintiff who was housed in a halfway house because "corrections officials do not infringe an inmate's liberty interests by placing him in one particular custodial facility over another").

      Thus, even though Benson was ordered to report to Gaudenzia as part of his parole, he was still in custody or under institutional confinement such that he did not have a protected

liberty interest in being placed at Gaudenzia. His "in custody" status therefore forecloses any false imprisonment claim under the Fourteenth Amendment. *See McCabe v. City of Philadelphia*, No. 01-3975, 2002 WL 32341787, at *4 (E.D. Pa. Nov. 13, 2002) ("A plaintiff cannot state a claim for false arrest when he is already in custody."), *aff'd*, 76 F. App'x 464 (3d Cir. 2003); *Talbert v. Dep't of Corr.*, No. 22-4189, 2022 WL 17177479, at *1 (E.D. Pa. Nov. 23, 2022) (dismissing false imprisonment claim on screening of a pretrial detainee where "the Commonwealth had already detained him for unrelated charges [and he was] awaiting trial"); *Hall v. Berdanier*, No. 09-1016, 2012 WL 1004916, at *3 (M.D. Pa. Mar. 23, 2012) ("Plaintiff has no claim for false arrest/false imprisonment under state law because his arrest did not cause him to be detained; he was already detained by virtue of his imprisonment."). Accordingly, Benson's Fourteenth Amendment false imprisonment claim will be dismissed.

   **B. Thirteenth Amendment Claim**

   Benson again realleges a Thirteenth Amendment claim. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. "A claim under the Thirteenth Amendment must include allegations of forced labor." *Fennell v. Kostura*, No. 19-669, 2019 WL 2615484, at *10 (E.D. Pa. June 25, 2019) (citing cases). Benson states that because he was not convicted of the crime for which he was detained at GWHCF, the fact that he was ordered to clean his cell and the tables in the day room under threat of placement in the restrictive housing unit was an "open violation" of his rights under the Thirteenth Amendment. (Sec. Am. Compl. at 12.)

As noted above, when he was detained at the GWHCF, Benson was still "in custody" and serving a sentence for the prior conviction. Therefore, to the extent that cleaning his cell and the tables in the day room could be deemed forced labor, it was punishment for the crime and thus not a Thirteenth Amendment violation. *See Davis v. Pennsylvania Dep't of Corr.*, No. 16-00515, 2019 WL 6338015, at *10 (M.D. Pa. Nov. 6, 2019) ("Thus, the Thirteenth Amendment is not implicated where a prisoner is incarcerated pursuant to a presumptively valid judgment of conviction by a court of competent jurisdiction, even if the conviction is subsequently reversed."), *report and recommendation adopted*, No. 2019 WL 6327813 (M.D. Pa. Nov. 26, 2019).

Even if Benson could be considered a pretrial detainee during his 45-day-detention at the GWHCF, his allegations nevertheless fail to allege a plausible Thirteenth Amendment claim. "[G]eneral housekeeping responsibilities" performed by pretrial detainees do not amount to a constitutional violation. *See Tourscher*, 184 F.3d at 242. Cleaning cells and tables in the common area of a prison are general housekeeping responsibilities and not forced labor violative of the Thirteenth Amendment. *See Mendez v. Haugen*, No. 14-4792, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015), *aff'd* (Feb. 22, 2016) (dismissing Thirteenth Amendment claim by pretrial detainee because "[c]leaning communal or general-use bathrooms in an inmate's housing unit are the type of normal housekeeping duties that fall outside the Thirteenth Amendment"); *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *10 (E.D. Mich. July 23, 2013) ("[R]equiring a pretrial detainee to help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the Thirteenth Amendment."); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (explaining that pretrial detainees may be

11

compelled, under threat of administrative segregation, "to perform general housekeeping chores"). Accordingly, Benson's Thirteenth Amendment claim will be dismissed.

        C.        **Denial of Medical Care Claim**

Benson also appears to reallege a claim based on the denial of medical care. Although Defendants did not address this claim in their Motion to Dismiss, the Court may independently screen this claim pursuant to § 1915(e)(2)(B)(ii). To state a claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Benson alleges that when he arrived to the GWHCF, intake officers and medical staff knew that he was bleeding internally but only conducted a urinalysis and provided Motrin. (Am. Compl. at 12.) In his Response to the Motion to Dismiss, Benson states that when he told one of

the intake officers he was in pain from the ride in the sheriff's van, she responded that he would "have to wait." (Mot. Dismiss Resp. at 3.) After having "a medical emergency where he began to urinate blood," Benson was later seen by a nurse, who did a urinalysis and provided him with two Motrin. (*Id*. at 4.) Benson states that he should have been seen by a "more appropriate and qualified" medical staff member when arriving at the GWHCF. (*Id*.) Benson also states that "after ten days of suffering from the pain of internal bleeding," he was "eventually seen by medical staff . . . where he received an X-ray and ultrasound. (*Id*.)

Despite a third attempt, Benson again fails to state a plausible constitutional claim based on the denial of medical are. Notably, Benson has again not alleged any facts raising a plausible inference that either of the two named Defendants – Williams and Root – were personally involved with or had any knowledge of his need for medical care upon arrival to the GWHCF. *See Rode*, 845 F.2d at 1207 (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). Moreover, Benson concedes that he received some medical attention when he arrived at the GWHCF. He was seen by a nurse, underwent a urinalysis, and provided medication. "If a prisoner is under the care of medical experts . . ., a non-medical prison official [such as Roots or Williams] will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Although Benson believes he should have been seen by a different medical provider, this simply represents a difference of opinion as to the proper medical care, which does not constitute deliberate indifference. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (*per curiam*) (stating that

13

allegations of negligent diagnosing and treatment, and mere disagreement as to proper medical treatment do not raise a constitutional claim).  Rather, when prisoners receive some medical treatment and a dispute arises "over the adequacy of treatment," district courts should not "second guess medical judgments and . . . constitutionalize claims which sound in state tort law." *U. S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (citation omitted).  Accordingly, Benson's claim based on the alleged denial of adequate medical care will be dismissed.

        **D.**      **Claim Based on Deliberate Indifference to Safety Concerns**

Benson also appears to reallege an Eighth Amendment deliberate indifference to safety claim based on allegations that he was placed on a unit that was unattended by guards and that had cell doors with faulty locks such that "inmates could get out or into any cell at will." (Sec. Am. Compl. at 5.)  Although Defendants did not address this claim in their Motion to Dismiss, the Court may independently screen this claim pursuant to § 1915(e)(2)(B)(ii).

Generally, "[t]o determine whether prison officials have violated the Eighth Amendment, [the Court will] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).  Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  As noted above, a prison official is not deliberately indifferent to an inmate's safety "unless the official knows of and disregards an excessive risk to inmate health or safety." *See Farmer*, 511 U.S. at 837.  The prison official "must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. However, a claim based on negligence is insufficient to allege a claim under § 1983. *See id*. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

For the same reasons Benson's deliberate indifference to safety claim failed in his Amended Complaint, it fails again in his Second Amended Complaint. Benson alleges that Williams "was told about the safety issue" concerning the cell door locks (Sec Am. Compl. at 8) and that "he felt his life was in jeopardy." (Mot. Dismiss Resp. at 4). However, Benson does not allege any facts raising a plausible inference that the faulty locks on unit 6 created a serious risk to his safety and that Williams was aware of that serious risk and consciously disregarded it. For example, Benson did not allege that there were any prior inmate-on-inmate attacks as a result of the faulty cell door locks, or that unit 6 or the GWHCF in general was a dangerous facility. Nor does Benson allege that he in, in particular, was at risk of being attacked. Accordingly, Benson fails to allege that the faulty cell door locks on unit 6 created a substantial risk of serious harm. His Eighth Amendment deliberate indifference to safety claim will therefore also be dismissed.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted and Benson's Second Amended Complaint will be dismissed with prejudice. As Benson has had three opportunities to assert plausible claims, the Court concludes that granting him leave to amend a fourth time would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944

F.3d 478, 483 (3d Cir. 2019) (concluding amendment by *pro se* litigant would be futile because litigant "already had two chances to tell his story").

An appropriate order follows.

**BY THE COURT:**

/s/ Juan R. Sánchez
_____
**JUAN R. SÁNCHEZ, J.**